UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>4.70 ACRES OF LAND, MORE OR LESS, IN THE COUNTY OF PENNINGTON, STATE OF SOUTH DAKOTA, and SHARON NORMAN,<br><br>Defendants. | CIV. 15-5055-JLV<br><br>ORDER |

## INTRODUCTION

Plaintiff United States filed a motion seeking to exclude testimony by defendant Sharon Norman that "residential development" is the "highest and best use" of the property which is the subject of this eminent domain proceeding. (Docket 47). Ms. Norman resists the government's motion. (Docket 50). For the reasons stated below, the government's motion is denied.

## ANALYSIS

The United States filed a complaint seeking condemnation of real estate for an easement for a transmission line and access road against property in rural Pennington County, South Dakota. (Docket 1). The real property subject to the easement is described as Tract 141ET, consisting of 4.20 acres, and Tract 141EA, consisting of .50 acres, for a total of 4.7 acres. (Docket 1-3). Through the Declaration of Taking Act, 40 U.S.C. § 3114, title to the real property

transferred to and became vested in the United States upon the filing of the declaration of taking and the deposit of just compensation into the registry of the court on July 30, 2015.[1]  (Dockets 3, 6 & 7).  "[P]ursuant to 40 U.S.C. §§ 3113 & 3114" the court required the government to "deposit the sum of $63,500 with the Clerk of Court," as the "estimated just compensation in this eminent domain action . . . ."  (Docket 6).  The government made the deposit required by the court's order.  (Docket 7).  The court entered an order granting the government's motion for immediate possession of the 4.7 acres effective September 1, 2015.  (Docket 13).

Ms. Norman moved the court "for the distribution of funds deposited by the United States with the Registry of the Court."  (Docket 27 at p. 1) (referencing Docket 24).  "Ms. Norman's ownership interest in the subject real property is undisputed."  Id. (internal citations omitted).  The court granted Ms. Norman's motion, "without prejudice to [her] right to demand and receive additional compensation for the taking of the property which is the subject of this litigation."  Id. at p. 3.  "[T]he disbursal . . . constitute[s] a credit against the final judgment . . . to Ms. Norman in the event a final judgment . . . exceeds the amount of the present disbursal."  Id.

---

[1] See 40 U.S.C. §§ 3114(b)(1) & (2) ("On filing the declaration of taking and depositing in the court . . . the amount of the estimated compensation stated in the declaration--title to the estate or interest specified in the declaration vests in the Government; . . . [and] the land is condemned and taken for the use of the Government . . . .").

2

Following the close of discovery,[2] the government timely filed a motion seeking to preclude Ms. Norman from testifying that the "highest and best use" of the 4.7 acres is "for residential development," instead "limiting [her] testimony on the value . . . after the taking . . . ." (Docket 47). "While the property has historically been used as pasture land for grazing," the government contends "[Ms.] Norman plans to testify at trial that it should be valued as if residential 'ranchettes' would be developed on the property." (Docket 48 at p. 1). The government asserts Ms. Norman's anticipated testimony should be excluded because:

1. Residential development is "not reasonably probable in the reasonably near future." Id. at p. 6 (capitalization omitted); and

2. Her testimony "is derived from a speculative highest and best use and is not supported by objective data." Id. at p. 9 (capitalization omitted).

The government argues that under Fed. R. Civ. P. 71.1(h), Ms. Norman's opinions are not grounded "in market data or objective facts," but are "only conclusory assertions about the effects of the easement." Id. at p. 2. "To establish a different highest and best use [other than current use]," the government submits Ms. Norman "must show, by a preponderance of the evidence, that the jury could reasonably conclude that the land is physically adaptable to the proposed use, and also that there is a need or demand for such use either in fact, at the time of the taking, or in the reasonably near future." Id.

---

[2]See Dockets 40 & 43.

3

at p. 7 (references omitted). "Absent such a showing," the government argues "the trial court must exclude that unsupported highest and best use from the fact finder's consideration." Id. (reference omitted). Notwithstanding its motion, the government contends her testimony regarding highest and best use should be limited "to the six sales that she identified as comparable at her deposition." Id. at p. 6 n.2.

Ms. Norman counters the government's argument by asserting that "[a]s a landowner, [she] is qualified to testify to the value of her property." (Docket 50 at p. 2). She contends her testimony must be allowed because as "a landowner [she] is presumed to have special knowledge [about] her property . . . [and] her testimony . . . is 'admitted in federal courts without further qualification.'" Id. (citing United States v. 79.20 Acres of Land, More or Less, Situated in Stoddard County, Missouri, 710 F.2d 1352, 1357 (8th Cir. 1983) (internal citation, some brackets and italics omitted). Ms. Norman argues her testimony, as well as that of the government's expert witness, is admissible and their opinions can be challenged through cross-examination at trial. Id. at p. 7.

Fed. R. Civ. P. 71.1 governs this eminent domain proceeding. It provides in part: "the court tries all issues, including compensation, except when compensation must be determined . . . by a jury when a party demands one within the time to answer or within any additional time the court sets, unless the court appoints a commission."[3] Fed. R. Civ. P. 71.1(h)(1) & (h)(1)(B). "[T]he

---

[3]Ms. Norman timely demanded a jury trial. (Docket 17 at p. 2).

trial judge should screen the evidence concerning potential uses . . . . Then . . . decide whether the landowner has produced credible evidence that a potential use is reasonably practicable and reasonably probable within the near future . . . . If credible evidence of the potential use is produced, the jury then decides whether the property's suitability for this use enhances its market value, and, if so, by how much."  United States v. 341.45 Acres of Land, More or Less, Located in St. Louis County, State of Minnesota, 633 F.2d 108, 111 (8th Cir. 1980) (internal citations and quotation marks omitted).  "The trial judge's screening of the evidence does not require an extensive and detailed review of all the evidence. Rather, the judge need only find that there is credible evidence that the property is adaptable to the use and that there will be a need or demand for such use in the near future."  Id. at pp. 111-12.

Relevant to the question before the court is the following information which is stated in the parties' legal memoranda without reference to the underlying documents.  Ms. Norman owns a 133-acre parcel, which includes the 4.7 acres, that is approximately two miles south of Rapid City, South Dakota, along Old Folsom Road.  (Docket 48 at p. 2).  The entire parcel is zoned by the City of Rapid City as A-2 Limited Agriculture, which permits agricultural uses, as well as residential uses with a minimum lot size of 10 acres.  Id.  The easements in this case "restrict additional construction within the easement area, but they permit continued grazing, as well as cultivation and other uses that do not interfere with the transmission line."  Id. at p. 3.

Ms. Norman did not designate an expert witness.   (Docket 48 at p. 3).
Rather, Ms. Norman intends to testify at trial as to the highest and best use value
of the 4.7 acres based on her experiences with the sale of six other lots adjacent
to the 133-acre parcel.   <u>Id.</u> at p. 4.   Two of the earlier sales to Basin Electric
involved 20-acre lots which sold for $15,000 and $20,000, per acre, respectively.
(Docket 49-1 at p. 7:8-11).   Three other lots sold for about $18,000, per acre.
<u>Id.</u> at p. 7:11-12.   The sixth sale to Red Truck Lines, LLC, involved a lot of
between 16 and 20 acres and sold for $18,000, per acre.   <u>Id.</u> at pp. 8:21-5;
10:1-4; 11:1-5.   These sales occurred about 12 years ago and 7-8 years before
Ms. Norman's deposition.   <u>Id.</u> at pp. 10:20-23; 11:11-13; 12:23-24; 14:11-13.

Approximately seven years ago Ms. Norman had the 133-acre parcel
platted by Sperlich Consulting.[4]   (Docket 49-1 at p. 3:18-19).[5]   Sperlich
Consulting was paid $7,000 to prepare the platting documents.   <u>Id.</u> at
pp. 3:25-4:1.   The property was platted into parcels of 10, 15, and 20-acre sites,
which Ms. Norman identifies as "ranchettes."   <u>Id.</u> at p. 3:3-6.   Ms. Norman did
not apply to the Pennington County Planning Department for any necessary

---

[4]Sperlich Consulting was identified in Ms. Norman's initial Rule 26 disclosures and 400 pages of information was turned over to the government as part of the Rule 26 process.   (Docket 53-1 at pp. 1-2).   The government did not conduct any additional discovery concerning the activities of Sperlich Consulting.   (Docket 50 at p. 7).

[5]The court cites to the CM/ECF page, with the corresponding lines of the deposition, and not to the court reporter's transcript page.

approval for the development of the property because she did not have the money.⁶  Id. at pp. 3:22-4:3.

Ms. Norman testified she has not been interested in selling the 133-acre parcel as ranchettes because the property is leased to her "niece for cattle [grazing], and [Ms. Norman] want[s] to keep it in the family."  Id. at p. 18:10-13. For this reason she has not advertised the ranchettes for sale.  Id. at p. 18:5-9. She has not done any sales comparisons "because I'm not interested . . . . [and] I don't care what they get."  Id. at p. 15:14-18.  Ms. Norman believes the 4.7 acres is worth $25,000 an acre.  Id. at p. 19:8.  Ms. Norman arrived at the figure for the value of the 4.7 acres based on the earlier sale and her belief "that the property has appreciated, not depreciated."  Id. at p. 15:9-13.

When the government acquires only an easement, the value of the taking is the "difference between the value of the property before and after the Government's easement was imposed."  United States v. Virginia Electric and Power Co., 365 U.S. 624, 632 (1961).  See also United States v. 47.14 Acres of Land, More or Less, Situate in Polk County, State of Iowa, 674 F.2d 722, 725 (8th Cir. 1982) ("The proper measure of just compensation when there is a taking of a part of a parcel of land is the difference between the fair and reasonable market value of the parcel immediately before the taking and the fair and reasonable market value of the remainder.").  "The burden of proving the value of the

---

⁶Because the property is within the three mile limit of Rapid City, "[a]ny plat or subdivision [final] approval would be the . . . decision of the City." (Docket 49-2 at p. 11).

7

condemned land rests upon the property owner . . . ." Id., at p. 725. "Market value can be shown best by comparable sales. . . . When there are no comparable sales, market value must be estimated." Id.

Resolution of a property's value "does not depend upon the uses to which [the landowner] has devoted [her] land but is to be arrived at upon just consideration of all the uses for which it is suitable." Olson v. United States, 292 U.S. 246, 255 (1934). "The highest and most profitable use for which the property is adaptable and needed or likely to be needed in the reasonably near future is to be considered, not necessarily as the measure of value, but to the full extent that the prospect of demand for such use affects the market value while the property is privately held." Id. "The fact that the most profitable use of a parcel can be made only in combination with other lands does not necessarily exclude that use from consideration if the possibility of combination is reasonably sufficient to affect market value." Id. "[A] proposed 'use' requires a showing of reasonable probability that the land is both physically adaptable for such use and that there is a need or demand for such use in the reasonably near future. . . . so as to avoid mere speculation and conjecture." 341.45 Acres of Land, 633 F.2d at 111. "Elements affecting value that depend upon events or combinations of occurrences which, while within the realm of possibility, are not fairly shown to be reasonably probable should be excluded from consideration, for that would be to allow mere speculation and conjecture to become a guide for

the ascertainment of value—a thing to be condemned in business transactions as well as in judicial ascertainment of truth." Olson, 292 U.S. at 257.

The government's expert witness, William Steigerwaldt, concluded the property's "highest and best use remains agriculture (including large-parcel residential) and investment." (Docket 49-2 at p. 12). Whether the large-parcel residential sites are 10, 15 or 20-acre parcels, it appears Mr. Steigerwaldt and Ms. Norman may not be that far apart in their analysis of the highest and best use of the property, but only as to the value of the 4.7 acres.

While the government argues the ranchettes are not a legally permissible use of the property, the court leaves it to the jury to determine whether any additional zoning approval or variance is required, the normal time period for processing an application and whether the necessary rezoning or variance would be granted in the near future. "[I]t is well settled law that if the landowner can demonstrate a 'reasonable possibility' that a permit would be issued or that rezoning will occur, thereby freeing the property for a use which otherwise would be precluded by regulatory restrictions, the owner is entitled to have that 'reasonable possibility' considered by the jury, provided of course that the use is otherwise a practicable and reasonably probable one." United States v. 320.0 Acres of Land, More or Less in Monroe County, State of Florida, 605 F.2d 762, 819 (5th Cir. 1979). The jury will be instructed that "within limits the jury may weigh the evidence and draw from the facts reasonable inferences and conclusions, using in this connection the jurors' own reason, common sense and

experience in life . . . ." United States v. 158.24 Acres of Land, More or Less, Situate in Ashley, Bradley and Union Counties, State of Arkansas, 696 F.2d 559, 565 (8th Cir. 1982).

Whether Ms. Norman's "opinions are subject to attack as being contrary to other . . . opinions and being inconsistent with other facts are matters for the jury. 'Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" Zens v. Slatkin & Co., Inc., CIV No. 11-1023, 2014 WL 1165874, at *4 (D.S.D. Mar. 21, 2014) (citing Russell v. Whirlpool Corp., 702 F.3d 450, 458 (8th Cir. 2012) (other citation omitted). "As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination. Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such evidence be excluded." Hartley v. Dillard's, Inc., 310 F.3d 1054, 1061 (8th Cir. 2002) (internal citations omitted).

The government's challenges to the testimony of Ms. Norman are matters best left to "vigorous cross-examination." Zens, 2014 WL 1165874, at *4. The court cannot find that Ms. Norman's testimony lacks credibility "that a potential use is reasonably practicable and reasonably probable within the near future." 341.45 Acres of Land, 633 F.2d at 111. Whether Ms. Norman's testimony

carries her burden of proving the value of the 4.7 acres must remain a jury question.  47.14 Acres of Land, 674 F.2d at 725.

**ORDER**

Based on the above analysis, it is

ORDERED that the government's motion (Docket 47) is denied.

Dated February 2, 2018.

                BY THE COURT:

                /s/ *Jeffrey L. Viken*
                JEFFREY L. VIKEN
                CHIEF JUDGE